UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 10-CV-01167 WDM - CBS

| | |
|---|---|
| MILLER INTERNATIONAL, INC., a<br>Colorado corporation.<br>Plaintiff, | )<br>)<br>)<br>) |
| v. | )<br>) |
| CLINCH GEAR, LLC, | )<br>) |
| Defendant and, | )<br>) |
| DAN HENDERSON<br>Individually and in his official capacity as<br>owner of CLINCH GEAR, LLC | )<br>)<br>) |
| Defendant and, | )<br>) |
| COLLECTIVE BRANDS, INC., a<br>Delaware for profit corporation | )<br>)<br>) |
| Defendant | )<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
CLAIMS SEVEN THROUGH TWELVE OF THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF RELEVANT FACTS ...................................................................................3

ARGUMENT ..............................................................................................................................4

I.      STANDARD FOR MOTION TO DISMISS ...................................................................4

II.     PLAINTIFF'S CLAIM FOR COMMON LAW FRAUD SHOULD BE
        DISMISSED ......................................................................................................................5

        A.      Plaintiff Fails to Allege the Elements of Common Law Fraud ...............................5

        B.      Plaintiff Fails to Allege Fraud With Particularity Pursuant to Rule 9(b) ...............8

III.    PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF SHOULD BE
        DISMISSED ....................................................................................................................11

IV.     PLAINTIFF'S CLAIM UNDER THE COLORADO UNIFORM FRAUDULENT
        TRANSFER ACT SHOULD BE DISMISSED...............................................................13

V.      PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY SHOULD BE DISMISSED..........14

VI.     PLAINTIFF'S CLAIM FOR ATTACHMENT SHOULD BE DISMISSED ...................17

VII.    PLAINTIFF'S CLAIM FOR ALTER EGO LIABILITY SHOULD BE
        DISMISSED ....................................................................................................................18

CONCLUSION..........................................................................................................................21

## TABLE OF AUTHORITIES

**Page**

### Cases

*AE, Inc. v. Goodyear Tire & Rubber Co.,*
   168 P.3d 507 (Colo. 2007) ....................................................................................5

*Abbott v. Kidder Peabody & Co., Inc.,*
   42 F. Supp. 2d 1046 (D. Colo. 1999) .................................................................11

*Adams v. Litton Loan, No. CV F 10-512 LJO DLB,*
   No. CV F 10-512 LJO DLB, 2010 WL 1444527 (E.D. Cal. April 9, 2010) ................ 3, 8, 10

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ............................................................................ *passim*

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 554 (2007) ............................................................................... *passim*

*Bender v. Douglas Cty. Sheriff's Dep't,*
   No. 08-cv-01530-LTB-MJW, 2009 WL 306602 (D. Colo. Feb. 6, 2009) ............................15

*Bixler v. Foster,*
   596 F.3d 751 (10th Cir. 2010) ..........................................................................5, 19

*Briehl v. Gen. Motors Corp.,*
   172 F.3d 623 (8th Cir. 1999) ..............................................................................8

*Cavitat Med. Techs., Inc. v. Aetna, Inc.,*
   No. 04-cv-01849-MSK-OES., 2006 WL 218018 (D. Colo. Jan. 27, 2006) ............................17

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.,*
   841 F. Supp. 1339 (E.D.N.Y. 1994) ..................................................................9, 16

*Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.,*
   97 P.3d 140 (Colo. App. 2003) ...........................................................................16

*Echostar Satellite Corp. v. Ultraview Satellite,*
   No. 01-cv-739-JLK, 2009 WL 1011204 (D. Colo. Apr. 15, 2009) .........................................18

*Icon Enters. Int'l, Inc. v. Am. Prods. Co., No. CV 04-1240 SVW,*
   No. CV 04-1240 SVW, 2004 WL 5644805 (C.D. Cal. Oct. 7, 2004) .......................................3

*Innotex Precision Ltd. v. Horei Image Prods., Inc.,*
    679 F. Supp. 2d 1356 (N.D. Ga. 2009) ........................................................................20

*Iowa Health Sys. v. Trinity Health Corp.,*
    177 F. Supp. 2d 897 (N.D. Iowa, 2001)..................................................................9, 16

*Kaldenbach v. Mutual of Omaha Life Ins. Co.,*
    100 Cal. Rptr. 3d 637, 652 (Ct. App. 2009) ...............................................................6

*Kingsburg Apple Packers, Inc. v. Ballantine Produce Co., Inc.,*
    No. 1:09-CV-901-AWI-JLT, 2010 WL 2817056 (E.D. Cal. July 16, 2010)...........19

*Koch v. Koch Indus., Inc.,*
    203 F.3d 1202 (10th Cir. 2000) ............................................................................5, 9

*Mbaba v. Indymac Fed. Bank F.S.B.,*
    No. 1:09-CV-1452, 2010 WL 424363 (E.D. Cal. Jan. 27, 2010) ...........................10

*Md. Cas. Co. v. Pac. Coal & Oil Co.,*
    312 U.S. 270 (1941)..................................................................................................12

*Meadows v. Hartford Life Ins. Co.,*
    492 F.3d 634 (5th Cir. 2007) ...................................................................................17

*Money Store v. Harriscorp Fin., Inc.,*
    689 F.2d 666 (7th Cir. 1982) .....................................................................................9

*N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.,*
    Nos. 6:07-cv-1503-Orl-19KRS et al., 2009 WL 1513389 (M.D. Fla. 2009)...........20

*Nelson v. Elway,*
    908 P.2d 102 (Colo. 1995).......................................................................................15

*Pace v. Swerdlow,*
    519 F.3d 1067 (10th Cir. 2008) .................................................................................3

*Pepsi-Cola Bottling Co. v. Pepsico, Inc.,*
    431 F.3d 1241 (10th Cir. 2005) .................................................................................5

*Prymak v. Contemporary Fin. Sols., Inc.,*
    No. 07-cv-00103-EWN-KLM, 2007 WL 4250020 (D. Colo. Nov. 29, 2007) ....................6, 7

*Rusheen v. Cohen,*
    128 P.3d 713 (Cal. 2006) .........................................................................................15

iii

*Safeworks, LLC v. Spydercrane.com, LLC,*
   No. 08-cv-0922-JPD, 2009 WL 4730821 (W.D. Wash. Dec. 7, 2009) ..................................3

*Sec. Serv. Fed. Credit Union v. First Am. Mortgage Funding, LLC,*
   No. 08-cv-00955-WYD-CBS, 2010 WL 1268072 (D. Colo. Mar. 30, 2010) ..........................5

*Sheldon v. Vermonty,*
   53 F. Supp. 2d 1157 (D. Kan. 1999) ...............................................................................16

*Sonora Diamond Corp. v. Superior Court of Tuolumne Cty.,*
   83 Cal. App. 4th 523 (Ct. App. 2000) .............................................................................19

*Surefoot LC v. Sure Foot Corp.,*
   531 F.3d 1236 (10th Cir. 2008)........ .............................................................................12

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ..........................................................................................8

*Tal v. Hogan,*
   453 F.3d 1244 (10th Cir. 2006) .......................................................................................3

*United States ex. rel. Sikkenga v. Regence Bluecross Blueshield of Utah,*
   472 F.3d 702 (10th Cir. 2006) .....................................................................................2, 8

## Statutes

28 U.S.C. § 2201 .............................................................................................................11

Colorado Uniform Fraudulent Transfer Act C.R.S § 38-8-101 *et seq.* ...........................4, 6, 12, 13

C.R.C.P. Rule 102 ..................................................................................................2, 5, 17, 18

Federal Rule of Civil Procedure 9(b).................................................................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1, 3, 6

iv

Defendants Clinch Gear Inc. ("CGI"),[1] Dan Henderson ("Henderson"), and Collective Brands Inc. ("Collective Brands" and collectively, "Defendants"), submit this memorandum of law in support of their motion to dismiss with prejudice Claims Seven through Twelve of the Amended Complaint ("AC") of Plaintiff Miller International Inc. ("Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").

## PRELIMINARY STATEMENT

Plaintiff appears to live in a world where *Twombly*, *Iqbal*, and Rule 9(b) of the Federal Rules of Civil Procedure do not exist. Obfuscating what was originally a straightforward case of trademark infringement, trademark dilution and unfair competition, Plaintiff has amended its Complaint by tacking on a series of claims purporting to allege fraudulent, conspiratorial, or otherwise unlawful misconduct relating to an asset purchase agreement (the "Assignment") entered between CGI and Clinch LLC, an affiliate of Collective Brands, which included the assignment of CGI's mark "CLINCH GEAR" to Clinch LLC. Plaintiff apparently believes that because CGI made the business decision to assign its mark to Clinch LLC, such a sale must somehow be wrongful, even though Plaintiff was on notice of the assignment nearly two weeks before it filed the AC, when the Assignment was recorded with the United States Patent and Trademark Office (the "USPTO").

Quite simply, Plaintiff does not provide a ***single factual allegation*** in support of any of these claims, as required by *Twombly* and *Iqbal*. In place of facts, Plaintiff attempts to smear Defendants through insinuation and innuendo, suggesting that Defendants engaged in some sort

---

[1]    Plaintiff named "Clinch Gear, LLC"—a nonexistent entity—as a defendant in both its Complaint and Amended Complaint. Defendants' counsel accepted service of the Amended Complaint on behalf of CGI, the California corporation Plaintiff ostensibly intended to name.

1

of wrongdoing by entering the Assignment—a contract to which Plaintiff was neither a party nor a third-party beneficiary. Specifically, Plaintiff's claims fail in the following respects:

- ***Fraud***: Plaintiff does not allege that Defendants made a material misrepresentation to Plaintiff, nor the existence of any damages. In addition, Plaintiff fails to allege the "who, what, when, where and how" of any alleged fraud, as required by Rule 9(b). *United States ex. rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). Plaintiff's claim under the Colorado Uniform Fraudulent Transfer Act is equally deficient, as Plaintiff does not allege it is a creditor or that Defendants are debtors.

- ***Declaratory judgment and civil conspiracy***: Plaintiff's claims for declaratory judgment and civil conspiracy both depend on the validity of Plaintiff's underlying allegation of fraud. Without a properly alleged fraud claim, both must be dismissed.

- ***Attachment***: Not only does Plaintiff fail to provide the required affidavit pursuant to Colorado law, but Plaintiff fails to provide the required "specific factual detail" in support of attachment other than the conclusory statement that there is a "reasonable probability" that the causes listed under C.R.C.P. Rule 102(c) exist. (AC ¶ 74).

- ***Alter ego liability***: Plaintiff fails to provide any factual allegations in support of its claim that Henderson is the alter ego of CGI other than a threadbare recitation of the factors courts use to evaluate an alter ego claim. Courts have repeatedly confirmed, based on *Iqbal* and *Twombly*, that such boilerplate allegations are insufficient to pierce the corporate veil.

The absence of any attempt by Plaintiff to provide factual underpinnings for these claims is so transparent, that this Court should question whether Plaintiff brought these claims with good faith. The harassing purpose behind these claims is exemplified by Plaintiff's request that the Assignment "be rendered null and void" (AC ¶ 64) and the transfer "set aside" (AC ¶ 67)— requests that serve no purpose other than to interfere with Defendants' contractual relations.

Plaintiff's failures cannot be attributed to innocent omissions or accidental oversights; the absence of any factual allegations in support of these claims is so extreme that they cannot withstand subsequent correction. *See, e.g., Adams v. Litton Loan*, No. CV F 10-512 LJO DLB, 2010 WL 1444527, at *6 (E.D. Cal. April 9, 2010) (dismissing plaintiff's claims with prejudice based on plaintiff's failure to provide any meaningful factual allegations).[2]  Plaintiff's Claims Seven through Twelve should thus be dismissed with prejudice pursuant to Rule 12(b)(6).

## STATEMENT OF RELEVANT FACTS

On May 1, 2010, CGI assigned its entire interest in the mark CLINCH GEAR (Serial Nos. 77/390,568 and 85/003,491) to Clinch LLC, an affiliate of Collective Brands.[3]  On May 19, 2010, after the Assignment had already been executed, Plaintiff commenced this action against CGI and Henderson, alleging that CGI's mark CLINCH GEAR infringes and dilutes Plaintiff's

---

[2]   In an effort to minimize needless motion practice and lessen any burden on the Court, Defendants provided Plaintiff with a draft of this memorandum in advance of its filing and requested that Plaintiff voluntarily withdraw Claims Seven through Twelve.  Plaintiff refused to do so.  Plaintiff's refusal to withdraw its claims after being put on notice of the AC's deficiencies further justifies dismissal of these claims with prejudice.

[3]   In considering a Rule 12(b)(6) motion , the Court may take judicial notice of matters of public record.  *See Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Courts have taken judicial notice of information publicly available on the USPTO website.  *See, e.g., Safeworks, LLC v. Spydercrane.com, LLC*, No. 08-cv-0922-JPD, 2009 WL 4730821, at *4 n.1 (W.D. Wash. Dec. 7, 2009) ("The Court may take judicial notice of the online records maintained by the USPTO."); *Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, No. CV 04-1240 SVW, 2004 WL 5644805, at *1 (C.D. Cal. Oct. 7, 2004) (court may take judicial notice of assignment documents filed with the USPTO).  Here, the accuracy of the facts concerning the notices of assignment cannot be reasonably questioned, as they are publicly available on the USPTO website.  *See* http://assignments.uspto.gov/assignments/q?db=tm&sno=77390568 and http://assignments.uspto.gov/assignments/q?db=tm&sno=85003491.  Defendants therefore request that the Court take judicial notice of the notices of assignment of interest in the marks, including the dates of execution and recordation with the USPTO.

designation CINCH, and that Henderson is the alter ego of CGI.   On June 2, 2010, the Assignment was recorded with the USPTO.

The AC filed by Plaintiff on June 14, 2010 is identical to the initial Complaint except that Plaintiff added Collective Brands as a Defendant and added the following causes of action against all three Defendants: (1) common law fraud; (2) declaratory relief that the Assignment be rendered null and void; (3) "Colorado Uniform Transfers Act C.R.S. 38-8-110"; (4) civil conspiracy to hide assets; and (5) Colorado Rule 102 for attachment.   Defendants move to dismiss these claims, as well as Plaintiff's alter ego claim, with prejudice.

## ARGUMENT

### I.   STANDARD FOR MOTION TO DISMISS

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court held that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." 550 U.S. 554, 570 (2007).   Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557 (quotation marks omitted).   The Supreme Court later explained that *Twombly* developed a two-pronged approach to pleadings, where

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).   Thus, a court must determine (1) whether factual allegations have been well-pleaded; and (2) if so, whether those allegations plausibly give rise to a claim for relief.

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (*quoting Iqbal*, 129 S.Ct. at 1949). A "rote recitation of the elements . . . in the form of a legal conclusion, is insufficient under both *Iqbal* and *Twombly*." *Sec. Serv. Fed. Credit Union v. First Am. Mortgage Funding, LLC*, No. 08-cv-00955, 2010 WL 1268072, at *2 (D. Colo. Mar. 30, 2010). In "[d]etermining whether a complaint states a plausible claim for relief," the Court is "to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

## II.   PLAINTIFF'S CLAIM FOR COMMON LAW FRAUD SHOULD BE DISMISSED

Plaintiff's claim for common law fraud is facially deficient, as Plaintiff provides nothing more than, at best, "a threadbare recital of the elements of a cause of action supported by mere conclusory statements," *Bixler*, 596 F.3d at 756, let alone satisfy Rule 9(b)'s heightened standard of particularity. *See* Fed. R. Civ. P. 9(b) (requiring that the circumstances in all averments of fraud be pleaded with particularity); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236-37 (10th Cir. 2000). Defendants address each standard in turn.

### A.   Plaintiff Fails to Allege the Elements of Common Law Fraud

Under Colorado and California law,[4] a claim for common law fraud must allege: (1) a false representation of a material existing fact; (2) the party making the representation knew that

---

[4]   In determining whether Plaintiff has stated a claim under state law, the Court applies the choice-of-law rules of Colorado. *See Pepsi-Cola Bottling Co. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Under Colorado choice-of-law principles, Plaintiff's common law fraud claim is determined by the "most significant relationship to the occurrence and parties" test. *See AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 510 (Colo. 2007). The AC does not specify where Plaintiff was when any supposed fraudulent events occurred, although Plaintiff alleges that its own corporate headquarters are in Colorado (AC ¶ 1). The execution of the

it was false; (3) the party to whom the representation was made did not know of its falsity (Colorado) / intent to defraud (California); (4) the representation was made with an intention that it be acted on; and (5) the representation resulted in damage. *See Prymak v. Contemporary Fin. Sols., Inc.*, No. 07-cv-00103-EWN-KLM, 2007 WL 4250020, at *41 (D. Colo. Nov. 29, 2007); *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 100 Cal. Rptr. 3d 637, 652 (Ct. App. 2009).

Plaintiff fails to allege the existence of these elements, justifying outright dismissal of this common law fraud claim under Rule 12(b)(6).  In relevant part, this claim alleges:

- The lawsuit was filed on May 19, 2010 and promptly served upon Defendants' attorney via U.S. mail. (AC ¶ 59).[5]

- "Subsequently, <u>with knowledge of the lawsuit</u>, [CGI and Henderson] fraudulently sold the Mark CLINCH [GEAR] to [Collective Brands] in order to avoid the asset CLINCH [GEAR] from being properly registered and to purposefully move the asset CLINCH [GEAR] to a different entity to derail this litigation and thwart this Court. The sale of the asset CLINCH [GEAR] after notice of litigation surrounding the asset shows a deliberate attempt by the Defendants to defraud the Court and Plaintiff CINCH® by tying up the legal process while [Collective Brands] trades off of the notoriety of the CINCH® name during this process." (AC ¶ 60) (emphasis in original).

---

Assignment occurred at CGI's offices in California, where CGI was headquartered and Henderson was (and continues to be) domiciled (AC ¶ 2).  Therefore, for purposes of this motion, the Court should assume that the relevant activity occurred either in Colorado or California.  In any event, applying either Colorado or California law, Plaintiff's fraud claim fails, as Plaintiff does not allege elements of the tort that are required under both states' laws.

[5]  Plaintiff also alleges that CGI and Henderson "committed fraud pursuant to federal law" and "committed fraud pursuant to the Colorado [Uniform] Fraudulent Transfer[] Act C.R.S §§ 38-8-101 to 38-8-112." (AC ¶ 59).  These two allegations (both of which are themselves nothing more than legal conclusions) may be discarded outright.  First, federal common law does not contain a right of action for fraud for the assignment of a trademark.  Second, Plaintiff's Tenth Claim is ostensibly brought under the Colorado Uniform Fraudulent Transfers Act § 38-8-110, discussed *infra* in Part IV.  Defendants therefore assume, awarding all inferences in Plaintiff's favor, that Plaintiff intended to state a cause of action under state common law fraud.

6

These allegations are conclusory statements, devoid of any factual support upon which relief may be established. For example, Plaintiff alleges that CGI and Henderson "fraudulently" sold the CLINCH GEAR mark in order to "derail this litigation and thwart this Court," and that the sale after notice of litigation "shows a deliberate attempt by the Defendants to defraud the Court and Plaintiff." (AC ¶ 60). Such statements do not provide any factual content that renders Plaintiff's claim for fraud sufficiently plausible. *See Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (emphasis added)). Indeed, Plaintiff does not even state what was fraudulent about the "sale."

*First*, Plaintiff does not allege the existence of a false misrepresentation made to *Plaintiff*. While the AC alleges that CGI and Henderson assigned the mark to Collective Brands "after notice of litigation" (AC ¶ 60), it does not allege that Defendants had a duty to inform Plaintiff of the Assignment. The absence of any allegation of the existence of a false representation to Plaintiff alone provides grounds for the Court to dismiss the claim. *See, e.g., Prymak*, 2007 WL 4250020, at *21 (dismissing fraud claim for failure to allege that misrepresentations were made to plaintiffs).

*Second*, Plaintiff does not allege that Defendants knew about a purported false statement.

*Third*, without establishing an alleged false statement, Plaintiff cannot (and does not) allege reliance on that (non-existent) statement. In fact, the AC confirms that Plaintiff did not rely on any statement by Defendants via its admission that it was aware of the Assignment and, in turn, filed the AC to add Collective Brands as a party. (*See* AC ¶ 3). *See Prymak*, 2007 WL 4250020, at *21 (dismissing fraud claim for failure to allege reliance).

7

*Fourth*, Plaintiff fails to allege that it has been damaged by any fraudulent conduct. *See Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 630 (8th Cir. 1999) (affirming dismissal of fraud claim where plaintiffs failed to plead damages, "an essential element"). To the contrary, Plaintiff filed the AC naming Collective Brands shortly after the Assignment was recorded.

Further, Plaintiff is not a signatory to the Assignment, nor does Plaintiff have an interest in the mark CLINCH GEAR (indeed, Plaintiff is attacking the mark's validity in the TTAB). It is therefore difficult to understand how the commonplace transaction of one party's assignment of a mark to another through a valid and enforceable contract that is duly recorded with the USPTO can somehow constitute an act of fraud upon a non-party such as Plaintiff—it defies the "judicial experience and common sense" that courts are directed to employ in order to sniff out spurious claims. *Iqbal*, 129 S.Ct. at 1950.

**B.   Plaintiff Fails to Allege Fraud With Particularity Pursuant to Rule 9(b)**

Even if Plaintiff sufficiently pleaded the required elements for common law fraud, it fails to plead with required particularity pursuant to Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the *who, what, when, where* and *how* of the alleged fraud, and must set forth the *time, place*, and *contents* of the false representation, the *identity* of the party making the false statements and the *consequences* thereof." *Sikkenga*, 472 F.3d at 726-27 (internal citations and quotation marks omitted, emphases added). Further, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Adams*, 2010 WL 1444527, at *6 (*quoting Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)).

8

The AC fails to satisfy each of these directives.  The AC is silent as to (1) who exactly committed an act of fraud, (2) what that act was, (3) when it took place, (4) where it occurred, and (5) how it took place.  The AC does not even state precisely what was fraudulent about the Assignment, substituting specificity with hypotheticals of Defendants' motives.[6]  Defendants thus have no notice of any factual ground upon which the claim is based other than that a "sale" took place—hardly the fair notice to which Defendants are entitled and which Rule 9(b) seeks to ensure.  *See Koch*, 203 F.3d at 1236 ("Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based." (quotation marks omitted, brackets in original)).

In addition, Plaintiff fails to inform each Defendant of its individual participation in the alleged fraud, instead referring to either "Defendants" or collectively referring to CGI and Henderson as "Defendant CLINCH" (AC ¶ 60).  *See Koch*, 203 F.3d at 1237 (dismissing claim of fraud where plaintiff "failed to identify any specific Defendant who made these alleged fraudulent misrepresentations or omissions").  Collective Brands is singled out once, for

---

[6]  Further, Plaintiff overlooks that courts will not look into parties' motives underlying the sale of a mark, even when it occurs during the course of litigation.  *See, e.g. Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1348 n.10 (E.D.N.Y. 1994) (holding, in the face of a party's claim that the sale of a trade name was for "nefarious" purposes, that "the motivation for a sale [of a trade name] is irrelevant" and concluding that the sale "may be properly achieved by assignment in anticipation of or in the midst of litigation" (*citing Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 678 (7th Cir. 1982)); *see also Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 926 (N.D. Iowa, 2001) (stating that, absent a contrary specific assurances to defendant to not do so, plaintiff may assign a mark in the course litigation and the court will not inspect plaintiff's motives).

9

"trad[ing] off the notoriety of the CINCH® name during this process" (AC ¶ 60)—an allegation

that can barely be understood, let alone inform Collective Brands of an act of alleged fraud.[7]

These deficiencies are not mere oversights or the absence of a fact or two; rather, Plaintiff

fails to present any effort to provide any factual content underlying its claim of fraud on a global

level. As one court recently held under similar circumstances:

> The complaint makes no effort to allege names of the persons who made the
> allegedly fraudulent representations, their authority to speak, to whom they spoke,
> what they said or wrote, and when it was said or written. The complaint fails to
> substantiate the circumstances alleging falseness attributable to defendants. The
> complaint lacks facts to support each fraud element or any elements grounded or
> sounding in fraud. [These] deficiencies are so severe to suggest no potential
> improvement from an attempt to amend.

*Adams*, 2010 WL 1444527, at *6 (dismissing plaintiff's fraud-based claims with prejudice); *see*

*also Mbaba v. Indymac Fed. Bank F.S.B.*, No. 1:09-CV-1452, 2010 WL 424363, at *8 (E.D. Cal.

Jan. 27, 2010) (dismissing fraud-based claims with prejudice because "[t]he complaint is

severely lacking and fails to satisfy Rule 9(b) 'who, what, when, where and how' requirements

as to Trustee Corps, as well the other defendants. . . . The fraud claims' deficiencies are so

severe to suggest no potential improvement from an attempt to amend"). Such is the case with

the AC—Plaintiff's failure even to attempt to provide factual support for its fraud-based claims

is so extreme, that Plaintiff should not benefit from a second bite at the apple. For these multiple

deficiencies, Plaintiff's Eighth Claim for common law fraud should be dismissed with prejudice.[8]

---

[7]   A final possibility, granting every inference in Plaintiff's favor, is that Plaintiff intended to
state a separate claim for fraud upon the Court. However, other than conclusory statements that
Defendants attempted to "derail this litigation," "thwart this Court," and "defraud the Court"
(AC ¶ 60), Plaintiff offers no factual content in support of such a claim.

[8]   The same is true for each of the other claims addressed in this motion. Claims Nine
(declaratory relief), Ten (California Uniform Fraudulent Transfer Act), and Eleven (civil

## III.   PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED

For its Ninth Claim, Plaintiff alleges that "the transfer of CLINCH [GEAR] to [Collective Brands] was done fraudulently," giving rise to an actual and justiciable controversy. (AC ¶ 61). According to Plaintiff, if Collective Brands and Henderson "are allowed to continue to use the CLINCH [GEAR] name, Plaintiff CINCH® will continue to lose profits due to confusion in the market place [sic]." (AC ¶ 62).   Based on nothing more, Plaintiff states that "[t]he issue of the sale of CLINCH [GEAR] to [Collective Brands] is ripe for a determination that this was an invalid transfer.   Therefore, Plaintiff CINCH® requests declaratory relief that the sale of CLINCH [GEAR] to [Collective Brands] be rendered null and void." (AC ¶ 64).

Plaintiff's prayer for declaratory relief under 28 U.S.C § 2201 should be dismissed. *First*, Plaintiff lacks standing to challenge the Assignment.  The asset purchase agreement is an express contract to which Plaintiff is not a party.  Nor does Plaintiff allege that it is a third-party beneficiary, the status of which "must be apparent from the agreement terms, surrounding circumstances, or both." *Abbott v. Kidder Peabody & Co., Inc.*, 42 F. Supp. 2d 1046, 1050 (D. Colo. 1999)   Because Plaintiff did not (and cannot) allege that it was a party to, or an intended beneficiary of, the Assignment, it simply does not have standing to seek its cancellation. *See id.* (third-party attacks on express contracts are permitted only "where the agreement is directly intended to benefit that third party").

---

conspiracy to hide assets) are all premised upon the existence of fraud, which Plaintiff does not sufficiently allege.  Further, Plaintiff fails to provide a single factual allegation in support of Claims Twelve (attachment) and Thirteen (alter ego liability).  Dismissal of these claims with prejudice is therefore justified.

***Second***, Plaintiff fails to allege (beyond conclusory statements) that there is a substantial controversy warranting declaratory judgment. To obtain a declaratory judgment, the moving party must present the Court with an actual controversy. "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1244 (10th Cir. 2008) (*quoting Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). To answer this question, courts consider whether a valid "straightforward" suit on the same cause of action could exist. *Id.* at 1245. Plaintiff offers no allegation other than that the Assignment of CLINCH GEAR to Collective Brands "was done fraudulently" as support of the existence of an actual controversy. (AC ¶ 61) Not only does such a statement fail to satisfy *Twombly*, *Iqbal*, and Rule 9(b), but Plaintiff also fails to allege that it has an interest in the Assignment (because, again, Plaintiff does not allege it is an intended beneficiary). Plaintiff thus has no straightforward cause of action to void the Assignment and presents no substantial controversy warranting its requested declaratory relief.

Plaintiff's ancillary (and conclusory) allegations that Defendants' use of the mark CLINCH GEAR will cause confusion in the marketplace and loss of profits have no bearing on Plaintiff's Ninth Claim, as such an "interest" pertains to Plaintiff's trademark claims, not fraud claims. These trademark-related issues have no bearing on the enforceability of the Assignment, as transferring the mark back to CGI and/or Henderson would not clarify whether Defendants' use of CLINCH GEAR on mixed-martial arts-related products is likely to cause "confusion in the market place [sic]." (AC ¶ 62). Because Plaintiff's request for declaratory relief is based

solely on its claim of fraud, and because Plaintiff has not established standing nor alleged the

elements for declaratory relief, Plaintiff's Ninth Claim should be dismissed with prejudice.

## IV.   PLAINTIFF'S CLAIM UNDER THE COLORADO UNIFORM FRAUDULENT TRANSFER ACT SHOULD BE DISMISSED

Plaintiff's Tenth Claim alleges that the Assignment was fraudulent and should be set

aside under the "Colorado Uniform Transfers Act C.R.S. § 38-8-110," which Defendants can

only assume is an attempt to state a claim under the Colorado Uniform *Fraudulent* Transfer Act

§ 38-8-105 ("CUFTA").[9]   Under CUFTA, "a transfer made or obligation incurred by a debtor is

fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith

actual intent to hinder, delay, or defraud any creditor of the debtor."   C.R.S. § 38-8-105(1)(a).

This claim was designed to prevent debtors from hindering creditors' recovery by transferring

assets to a third party.  *See id.*  CUFTA sets out certain factors to determine whether or not a

transfer was fraudulent, all of which require an existing or imminent debt.  *See id.* § 38-8-105(2).

Plaintiff does not allege in its Tenth Claim—or anywhere else—that Defendants are

"debtors" in a creditor/debtor relationship with Plaintiff.  The reason is simple: Defendants have

no relationship at all with Plaintiff.  Merely filing a lawsuit against a party does not transform

that party into a debtor.  Indeed, § 38-8-102(7) of CUFTA defines "debtor" as "a person who is

*liable* on a claim" (emphasis added).  Plaintiff has no judgment of liability against Defendants,

and without such a judgment, Defendants simply are not debtors under CUFTA as a matter of

law.  The failure to so allege requires the Court to dismiss the Tenth Claim with prejudice.

---

[9]   C.R.S. § 38-8-110 is facially inapplicable to Plaintiff's claim, as it establishes a defendant's grounds for extinguishing an action under the statute.  *See* C.R.S. § 38-8-110 ("Extinguishment of cause of action.")  Defendants can only assume that Plaintiff intended to invoke the CUFTA, § 38-8-105 ("Transfers fraudulent as to present and future creditors").

In place of the required elements of a CUFTA claim, Plaintiff strings together rephrasings of the same conclusory statements alleged in its Eighth Claim.  Not one of these allegations has anything to do with CUFTA.  For example, Plaintiff alleges:

- "[Defendants] transferred ownership of the mark CLINCH [GEAR] with the purposeful intent to defraud Plaintiff CINCH® and frustrate the judicial process.  All Defendants were aware of the complaint and service of the lawsuit and subsequently took action to hide the unlawful mark CLINCH [GEAR] behind the veil of [Collective Brands] to defraud Plaintiff CINCH® and this Court.  On information and belief, the transfer of CLINCH [GEAR] to [Collective Brands] was suspiciously done in an 'overnight' deal.  On information and belief, the mark CLINCH [GEAR] was sold to [Collective Brands] for nothing close to reasonable value as defined by Dan Henderson a mere few weeks before." (AC ¶ 65).

- "The transfer of CLINCH [GEAR] to [Collective Brands] was done merely to frustrate the judicial process and allow CLINCH [GEAR] to continue to infringe upon Plaintiff CINCH®. (AC ¶ 66).

- "Therefore, the transfer of the mark CLINCH [GEAR] to [Collective Brands] should be set aside. (AC ¶ 67).

Aside from Plaintiff's irrelevant accusation that, on "information and belief," the Assignment was "suspicious[]" and the value not "reasonable," Plaintiff requests, with no explanation or foundation, that the Assignment be "set aside."  Such an act would serve no purpose, as Plaintiff is admittedly aware that Collective Brands' affiliate, Clinch LLC, is the assignee of CLINCH GEAR.  Further, for the reasons discussed *supra* Part III, as a non-party to the Assignment, Plaintiff has no authority to request that the Court transfer ownership of the subject of a mutually entered and valid contract between two private parties.

V.   **PLAINTIFF'S CLAIM FOR CIVIL CONSPIRACY SHOULD BE DISMISSED**

To establish a civil conspiracy, Plaintiff must allege: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one

or more unlawful overt acts; and (5) damages as the proximate result thereof. *See Bender v. Douglas Cty. Sheriff's Dep't*, No. 08-cv-01530-LTB-MJW, 2009 WL 306602, at *8-9 (D. Colo. Feb. 6, 2009); *see also Rusheen v. Cohen*, 128 P.3d 713, 722 (Cal. 2006) (California law: (1) formation and operation of the conspiracy; and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design).[10]  The agreement necessary to support a conspiracy may not be inferred. *See Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995).

Despite these requirements, Plaintiff offers no factual content to suggest that any activity by Defendants constituted a meeting of the minds while pursuing a common unlawful overt act. *See Bender*, 2009 WL 306602, at *5.  Plaintiff alleges:

- Henderson and CGI "entered into an agreement in late May or early June of 2010, for the transfer of the mark CLINCH [GEAR] to Collective Gear [sic]." (AC ¶ 68).

- "This agreement was made to defraud Plaintiff CINCH® of its legal rights to protect its interest in the mark CINCH®.  This agreement was made to further throw sands in the gears of the judicial system.  This agreement was meant to ignore the United States Patent and Trademark laws and transfer such mark during pending litigation." (AC ¶ 69).

- Henderson, Collective Brands, and CGI "unlawfully transferred the asset CLINCH [GEAR] that was subject to litigation in order to hide this asset behind [Collective Brands] and continue to operate and gain notoriety for the mark CLINCH [GEAR] because Defendant [Collective Brands] is able to more aptly enhance the marks [sic] value and also slow down the legal process while fraudulently creating more value to the brand CLINCH [GEAR], thus becoming detrimental to Plaintiff CINCH®'s brand value.. [sic]" (AC ¶ 70).

These statements, if true, only purport to allege some unspecified act of wrongdoing and alleged motivations—they do not provide facts sufficient to establish the existence of a

---

[10]  For the same reasons discussed *supra* fn. 4, it is unclear whether Colorado or California law applies. Nonetheless, Plaintiff's civil conspiracy claim fails under both states' laws.

conspiracy.  *See Sheldon v. Vermonty*, 53 F. Supp. 2d 1157, 1169 (D. Kan. 1999) (dismissing civil conspiracy claim where plaintiff alleged no facts indicating that any defendant engaged in concerted action with any other defendant to accomplish an unlawful act).

*First*, Plaintiff fails to allege any unlawful or wrongful overt act in furtherance of a conspiracy.  While Plaintiff repeatedly insists that the Assignment was entered for the purpose of defrauding Plaintiff, the mere assignment of a mark is not an unlawful overt act.  (*See supra* fn. 6, discussing *Dial-A-Mattress Operating Corp.*, 841 F. Supp. at 1348 n.10 and *Iowa Health Sys.* 177 F. Supp. 2d at 926.)  Further, Defendants promptly recorded the Assignment with the USPTO *before* Plaintiff filed its claim for civil conspiracy (negating any allegation of damages). It is therefore perplexing how Plaintiff can conclude that the Assignment was made to "hide" the asset and "throw sands in the gears" of the judicial system.  Entering into an assignment that is duly recorded with the USPTO is not an unlawful act just because Plaintiff (wrongly) believes that the mark CLINCH GEAR infringes or dilutes its own mark; if that were true, any plaintiff could step in and block a lawful assignment of a mark by initiating an action and insisting that the mark cannot be assigned until the litigation is complete.  Collective Brands has every right to purchase and enhance the value of a mark that it perceives to be the victim of a meritless lawsuit. The decision to assign that mark is not ignorant of United States trademark law; it is an unremarkable, commonplace agreement between two consenting parties.  *See id.*

*Second*, Plaintiff's failure to sufficiently allege fraud dooms its claim for civil conspiracy because it is derivative of Plaintiff's inchoate fraud claims.  A claim of civil conspiracy incorporates other causes of action in its fourth element; thus, a civil conspiracy is often called a "derivative" cause of action. *See, e.g., Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l,*

16

*L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). Without an allegation sufficient to establish that there was an independent unlawful act to satisfy the fourth element (as is lacking here), there can be no civil conspiracy claim. *See Cavitat Med. Techs., Inc. v. Aetna, Inc.*, No. 04-cv-01849-MSK-OES., 2006 WL 218018, at \*5-6 (D. Colo. Jan. 27, 2006). Thus, for the reasons set forth above, Plaintiff's failure to state a claim for fraud requires dismissal of Plaintiff's civil conspiracy claim with prejudice. *See, e.g., Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) ("[W]hether Meadows stated a claim for civil conspiracy rises and falls on whether he stated a claim on an underlying tort.").

## VI.    PLAINTIFF'S CLAIM FOR ATTACHMENT SHOULD BE DISMISSED

Plaintiff's claim for attachment of Defendants' non-exempt property under Rule 102 of the Colorado Rules of Civil Procedure ("Rule 102") is faulty on multiple grounds.

*First*, Plaintiff has not filed the affidavit required by Rule 102(b), which states that "[n]o writ of attachment shall issue unless the party asserting the claim . . . shall file . . . an affidavit setting forth that the defendant is indebted to the plaintiff, or that the defendant is liable in damages to the plaintiff for a tort . . . stating the nature and amount of such indebtedness or claim for damages and setting forth facts showing one or more of the causes of attachment of section (c) of this Rule." While Plaintiff purports to affirm through its counsel that there is "reasonable probability" that certain causes exist (AC ¶ 74), such a representation does not satisfy Rule 102(b), which explicitly requires an affidavit, and the claim must be dismissed.

*Second*, even if Plaintiff filed the requisite affidavit, Plaintiff does not establish a claim for plausible attachment under any of the causes in Rule 102(c). To sustain an attachment, Plaintiff has the burden of showing "in specific factual detail . . . that there is a reasonable

probability that any of the . . . causes exist[.]" Rule 102(c). Plaintiff does not provide a single

factual detail in support of the two purported causes for attachment; instead, Plaintiff repeats the

statutory language almost verbatim, alleging with a single conclusory statement that there is a

"reasonable probability" that the causes exist. (AC ¶ 74). Nor has Plaintiff stated "the nature

and amount of such indebtedness or claim for damages," as required by Rule 102(b).[11]

## VII.   PLAINTIFF'S CLAIM FOR ALTER EGO LIABILITY SHOULD BE DISMISSED

Finally, in its Seventh Claim, Plaintiff seeks to pierce the corporate veil of CGI to hold

Henderson personally liable for any judgment against CGI. While this claim was present in both

the initial and Amended Complaint, it nonetheless suffers from the same *Twombly / Iqbal*

deficiencies detailed above and must be dismissed with prejudice.

In the Tenth Circuit, courts apply the law of the state of incorporation to determine

whether the corporate veil should be pierced. *See Echostar Satellite Corp. v. Ultraview Satellite*,

No. 01-cv-739-JLK, 2009 WL 1011204, at *7 (D. Colo. Apr. 15, 2009). The Court may take

judicial notice that CGI was (until its corporate status was suspended) a California corporation

registered with the California Secretary of State. (*See* AC ¶ 2, describing CGI as a "California

resident[]"). Under California law, there are two conditions that must be met for alter ego

liability: (1) there must be a unity of interest and ownership such that the separate personalities

of the corporation and the individual no longer exist; and (2) the observance of two separate

---

[11]   The mere presence of this claim in the AC is unorthodox. Generally, a Rule 102 request for
attachment is achieved by motion seeking a writ (containing argument establishing the
"reasonable probability" that the causes exist) accompanied by an affidavit (providing "specific
factual detail within the knowledge of the affiant or witness"). By presenting its request in the
AC, Plaintiff does not present an affiant or witness with knowledge, and does not present
argument in support—it only repeats the language of Rules 102(c)(4) and 102(c)(5). Indeed,
Plaintiff does not even mention attachment in its requested relief.

entities would sanction a fraud, promote injustice, or an inequitable result would follow. *See Sonora Diamond Corp. v. Sup. Ct. of Tuolumne Cty.*, 83 Cal. App. 4th 523, 538 (Ct. App. 2000).

The AC fails to provide the requisite factual detail to survive a motion to dismiss, as it provides nothing more than a list of factors courts use in evaluating an alter ego claim, devoid of any factual content relating to the instant dispute. Plaintiff's allegation in its entirety reads:

- Upon information and belief, [Henderson] has, at all times herein mentioned, completely controlled, dominated, managed and operated Defendant [CGI] and/or intermingled his assets with those of [CGI] to suit his convenience and wrongfully and knowingly diverted corporate funds and assets for other than corporate use including the above mentioned causes of action using the Marks, including, without limitation, for personal benefit and other-wise [sic] used [CGI] to evade his contractual obligations and/or to engage in fraudulent and/or other wrongful acts and/or conduct for his personal benefit and to avoid individual liability for the above-mentioned Causes of Action. Based on the foregoing facts, there existed a unity of interest and ownership between [CGI] and [Henderson] on the one hand, and [Henderson] and [CGI] on the other hand, such that any individuality and separateness between [Henderson] and [CGI] has ceased to exist, and [CGI] is the alter ego of [Henderson] as set forth herein. Adherence to the fiction of the separate existence of [CGI] would, under the particular circumstances, sanction or promote a fraud or injustice. (AC ¶ 57)

This is a quintessential example of the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Bixler*, 596 F.3d at 756, rejected by *Iqbal*. Plaintiff provides no *factual* content specific to Henderson in support of its alter ego claim; rather, Plaintiff merely lists the factors that courts consider when deciding whether to pierce the corporate veil, connected by "and/or"s. A recitation of the factors courts use to evaluate alter ego claims is not a substitute for facts, and courts reject such laundry lists as insufficient to provide a basis for alter ego liability. *See, e.g., Kingsburg Apple Packers, Inc. v. Ballantine Produce Co., Inc.*, No. 1:09-CV-901-AWI-JLT, 2010 WL 2817056, at *5 (E.D. Cal. July 16,

2010) (holding under California law that plaintiff's allegations "are insufficient to plead an alter ego relationship because they are conclusory and merely recite the factors that a court considers in evaluating alter ego claims.").[12]  Indeed, Plaintiff's allegation could be inserted verbatim into almost any complaint, merely swapping out the named parties.  Such an allegation cannot give rise to a plausible claim of alter ego liability sufficient to pierce the corporate veil.  *See id.*[13]

Even if Plaintiff's allegations were sufficient to satisfy the first element of the alter ego requirements, Plaintiff fails to proffer any factual allegations in support of the second element of an alter ego claim—that the observance of two separate entities would sanction a fraud, promote injustice, or an inequitable result would follow.  In pleading this second element, Plaintiff merely parrots the same language of the standard, alleging with no factual support that "adherence to the fiction of the separate existence of [CGI] would, under the particular circumstances, sanction or promote a fraud or injustice."  (AC ¶ 57).  This sort of threadbare recitation, without any factual allegation whatsoever, is precisely what *Twombly* and *Iqbal* deemed insufficient.  Plaintiff's claim for alter ego liability should therefore be dismissed with prejudice.

---

[12]   *See also Innotex Precision Ltd. v. Horei Image Prods., Inc.*, 679 F. Supp. 2d 1356, 1360 (N.D. Ga. 2009) (dismissing alter ego claim under *Iqbal* alleging, *inter alia*, intermingling of assets and using corporate funds for transacting their own affairs, holding that such statements are not factual allegations but rather "appear to be 'threadbare recitations' of factors cited by Georgia courts in deciding whether to pierce the corporate veil"); *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, Nos. 6:07-cv-1503-Orl-19KRS et al., 2009 WL 1513389, at *9 (M.D. Fla. 2009) (dismissing alter ego claim under *Iqbal* because the allegation, including commingling of funds and failure to keep adequate business records, "appears to be language from the case law listing the elements of alter ego status rather than with specific facts").

[13]   In addition, to the extent that Plaintiff frames Henderson's acts as fraudulent (*see* AC ¶ 57 (alleging that Henderson "wrongfully and knowingly diverted corporate funds and assets," used CGI "to evade his contractual obligations," and "engage[d] in fraudulent and/or other wrongful acts and/or conduct")), such allegations must be pleaded with particularity pursuant to Rule 9(b).

**CONCLUSION**

For the foregoing reasons and pursuant to Rule 12(b)(6), Defendants' motion to dismiss with prejudice Plaintiff's claims of alter ego liability (Claim Seven), common law fraud (Claim Eight), declaratory relief (Claim Nine), Colorado Uniform Fraudulent Transfer Act (Claim Ten), civil conspiracy to hide assets (Claim Eleven), and Colorado Rule 102 attachment (Claim Twelve), should be granted.

DATED this 13th day of August, 2010.

Respectfully submitted,

s/ Michael G. Martin
Michael G. Martin
LATHROP & GAGE, LLP
370 17th Street, Suite 4650
Denver, Colorado  80202
Telephone:     (720) 931-3200
Facsimile:     (720) 931-3201
E-mail:        mmartin@lathropgage.com

Robert L. Raskopf
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, New York  10010
Telephone:     (212) 849-7185
Facsimile:     (212) 849-7100
E-mail:        robertraskopf@quinnemanuel.com

ATTORNEYS FOR DEFENDANTS
  *Clinch Gear Inc., Dan Henderson, and
  Collective Brands, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

John P. Schmitz
Mills Schmitz & Zaloudek
600 17th Street, Suite 2800 S
Denver, Colorado  80202
jschmitz@mandzattorneys.com


s/Michael G. Martin